## STEPHENS *v.* THE STATE.

*Simmons, C. J.*—The newly discovered evidence being such as would probably produce a different verdict, and the showing as to diligence, so far at least as relates to two of the newly discovered witnesses, being sufficient, a new trial should have been granted.    *Judgment reversed.*

May 4, 1896.

Indictment for burglary. Before Judge Harris. Floyd superior court. July term, 1895.

The burglary was alleged to have been committed on April 17, 1895, in breaking and entering the storehouse of N. C. Landers with intent to steal, and taking and carrying away therefrom $450.27, the property of N. C. Landers,

with intent to steal the same. Stephens was found guilty, and his motion for new trial was overruled.

The motion set up, in addition to the general grounds, newly discovered evidence as shown by the following affidavits: Robert H. Stephens: Was at the storehouse of N. C. Landers on the night on which the money was lost therefrom, on account of which defendant was convicted of burglary. A number of persons, including defendant, were there. About nine o'clock p.m. all left the store except Berry and Jesse Landers, sons of N. C. Landers. Defendant after leaving the store went back to the store, and deponent followed him. Defendant called Berry Landers who let him in at the door. Deponent then went around to the window of the store and saw defendant, Berry and Jesse Landers playing poker for money, and deponent then left.—S. C. Scott: On the night in question he passed the store of N. C. Landers at about 12 o'clock. Hearing a noise and seeing a light in the store, he went to the window and saw Berry and Jesse Landers and defendant in the store playing cards for money.—Mrs. David Pyle: On the night in question her husband came home about nine o'clock. After he came home she heard walking and talking out at the store, which was from fifty to seventy-five yards from her house. Afterwards some one came and knocked at her back door, and then went back out to the store and stood on the porch and talked, and then went in the store and shut the door. This was about ten o'clock p.m. She heard them out at the store till about 12 o'clock that night, when they opened the front door and one came out and the other went back through the store. Also, the affidavits of defendant and his counsel, as to their ignorance of the above alleged newly discovered evidence until after the trial, and as to their diligence in preparing for trial; and affidavits of six persons, that Scott, Mrs. Pyle, and Robert H. Stephens were persons of good character and veracity.

Briefly stated, the evidence for the State was to the effect

that the money was left at night in the safe of N. C. Lan-ders and in a vault in that safe. Berry Landers knew the combination and had one of the keys to the vault, his father having the other. Berry Landers slept in a back room of the store about forty or fifty feet from the safe. When he went to bed that night he had the key to the vault in his breeches pocket. It was found the next morning lying on the counter, about half way from the safe to the front door. The safe door was closed but was unlocked, and one of the vault doors was unlocked. Defendant had a key which would unlock the front door of the store. After he was arrested he stated that his partner, by the name of Glass, went in and he (defendant) stood at the door and watched, that he unlocked the store and went in. Berry Landers testified, among other things, that he slept in the back room of the store that night; he did not know whether or not the safe was locked that day or evening; his brother slept with him that night; it was witness's business to lock the safe, but he knew he did not lock it that night; he had not been in the safe that day, and his father had not that he knew of, though his father could have gone into it while he went to breakfast; defendant was in the store that night till witness shut up, about nine o'clock; he might have played poker with defendant, but didn't do so that night, nor did he play poker with any one else that night; defendant didn't gamble with him and get any of the money; he knew nothing about defendant taking the money until the next morning; he went to bed with his breeches at the head of his bed, and some one came in and got them out and got the keys out of his pocket, and he did not wake up; he never did play cards and bet for money; played that night for nothing but fun.

The defendant's statement was, in brief, that he won the money from the sons of Landers that night at poker; that he left the store with his brother and tried to get him to come back, and his brother wouldn't, and defendant went

on down to the store and played cards with the boys till he had won the money; that after he had won the money the boys wanted him to give it back and he wouldn't do it, and then they told him if he would go off and stay off they would stick to him if they ever brought him back; and that he had made the statement after his arrest, about unlocking the door and Glass getting the money, etc., because he didn't want to give the boys away, as he had told them he wouldn't, and they had said they would stick to him.

In connection with the newly discovered evidence, there was an affidavit by Robert H. Stephens, that he is a brother of defendant, saw him several times during the three months he was in jail, had talks with him about his case, and was present at the trial; and that Scott, Mrs. Pyle and other affiants before referred to live from half a mile to a mile from defendant's home.

*Seaborn Wright*, for plaintiff in error.
*W. J. Nunnally, solicitor-general*, contra.